Our third case of the morning is in two consolidated appeals, 25-1021 and 24-2887, the United States v. Brian Johnson. My name is Leonard Goodman, I represent Brian Johnson. The central issue in this appeal is whether a person who tells elaborate lies in order to induce women to have sex with him can be convicted of sex trafficking. It's our position that the answer must be no. The fundamental problem here is that there is no trafficking whatsoever in this case. The district court recognized this problem, noting that a typical sex trafficking case involves three parties, a pimp or a trafficker, a victim, and a client. Here we have just two parties, a fraudster and victims. But there's nothing in this statute that says there has to be more than two parties involved. I understand that what we do typically see involves more than just the trafficker and the victim, but the statute is written very broadly. It doesn't seem to limit it to just that scenario. It is broadly, but it does seem to address a situation where there is a trafficker and he causes the victims that he traffics to engage in commercial sex. Can I test you on that a little bit? Yes. All right. Suppose the defendant, I'm going to change the facts on you. Okay. Suppose the defendant recruited 25 underage girls from overseas to travel to the United States on the same kind of false and fraudulent promises and then the same kind of conduct occurred. What outcome there? If that would still not be trafficking if he didn't actually traffic the women, if it was just a scheme to have sex with women from Eastern Europe. What does it mean to traffic the women? Well, tie that, I'm sorry to interrupt, but let me just jump on to Judge Scudder's question. Tie that to the language of the statute, please. Well, the statute talks about commercial sex, but also if you look in the second circuit noted this. So in the hypothetical, we're going to give you time, okay? In the hypothetical, the answer, your position is the same. You direct a verdict of acquittal. I think if he takes their passports, which is a typical sex trafficking case, and if he takes their passports and is holding them as human slaves, then yes, I think this possibly could. Okay, so here's the question. It's Judge Sainee's question. So if that fact pattern, including confiscating passports or stealing them or whatever, if that possibly fits within the, can you go through the statutory analysis of that? Yes, well, there still has to be commercial sex. Right, and so that's why I asked you the hypothetical, because I thought your position was that a false or fraudulent promise, akin to the ones Mr. Johnson delivered, does not constitute, quote, anything of value, unquote, within the meaning of Congress's definition of commercial sex act. So I thought your answer would have to be, whether they're coming from overseas, whether passports are being stolen, whether there's two people or 22 people involved, that the statutory definition's not satisfied. Yes, I think that's correct, Your Honor, because the commercial sex involves some sort of, something of value being transferred, being given or received. That's what the statute says, and in this case, there is... So on that hypothetical, does that make any sense to you? Well... And how would the passport, taking of the passports, make it fall within the definition of a commercial sex act, then? It would not, but what it would do is it would make it closer to trafficking, because the statute, and if we look at... But the statute doesn't turn upon, do the optics of the fact pattern look like trafficking, right? That's not the test. The test is laid out by elements that have been enacted into law by Congress. And it doesn't add in a third party. Well, there is no prior case in the history of the statute where there was only two parties. I'm not sure that's true. So this is a case of first impression. I'm not sure that's true. We have upheld cases involving just two, but this issue on a fairness was not raised. I guess we're sort of... I see two problems with this. One is, and if we look at the purposes of Congress, and that is codified in Section 22 USC 7101. Congress was concerned with trafficking in persons in a modern form of slavery. That's the first finding of Congress. And traffickers often transport victims. This would fit your hypothetical. Often transport victims from home communities to unfamiliar destinations, including foreign countries. So do we have to go to the legislative history to agree with you? Well, I think the legislative history shows that there is a focus on human trafficking and use of sex slaves. And that is not present in this case. It's undisputed that this was more akin to somebody on a dating app. Who says, if I go on a dating app and I pose as a Saudi prince, and I tell women that they can be wealthy if they succumb to my advances, then if this case is affirmed, that could be sex trafficking and have a mandatory minimum sentence of 15 years. I don't believe that that was Congress's intent. And I do think it's helpful to look at what Congress was concerned with when they passed this trafficking statute. Now, your hypothetical is certainly a different case. If women are kept by the defendant, I suppose you could make an argument that he's trafficking them to himself. But you still need commercial sex. There still has to be something in exchange. I think that's got to be your – I mean, the word trafficking is not an element. And whether it, to the eye, has the optics of looking like a trafficking fact pattern, I don't know how you do – I think you have to analyze it in terms of the elements and the way the elements are defined. Okay. Well, let's look at the elements of commercial sex then. Right. So on my hypothetical, it has to be – you'd have to direct a verdict. There would have to be an acquittal because it's a false and fraudulent promise, and a false and fraudulent promise does not have value. That's correct. I would agree with that. And it doesn't matter. You could take 25 and make it 500 underage women. I agree, Your Honor. I do think that the element of human slavery certainly would make it a much – What element of human slavery? That's what I'm not following. Well, no, I'm just saying that if, in your example, these women are not just brought over here for the purpose of sex but are kept, which is a typical fact pattern in sex trafficking cases. Passports are taken, they're held, and trafficked as sex slaves. That's not this case. But that wasn't the hypothetical. Okay. The hypothetical was the person who brought them over has sex with them, not that he traffics them to others. Then I would agree that that would not be sex trafficking because nothing of value has been exchanged. If I invest $100,000 in a horse farm in Kentucky and the horse farm doesn't exist, I have received nothing of value in exchange for my money. Would it matter to you what if your client had actually paid these women? Well, it would be a more difficult case if he had, but it would be a more difficult case if he had paid them. So is your argument hinging on that just a promise cannot be a thing of value? Well, it's not. A false promise is not a thing of value. Now, if he had paid them, the government would certainly have a stronger argument that this fits within the definition of commercial sex because something of value. Then you'd just have the two people, too. That's true, Your Honor. But my point is just that I have not seen any case that involves two people, and the judge was troubled by that as well. No, that's fair. Frankly, I think you're right about that. I know you want some rebuttal time. Can we shift gears for a second to that child pornography conviction? Yes. Okay. I want you to assume, because I think this is actually the legal standard. You can fight the premise of it if you want. Assume the jury credited, meaning agreed with, the evidence of the victim, Jamie, telling the defendant and then ultimately showing the defendant with her ID that she was underage. Assume the jury credited that testimony. Is that sufficient evidence to sustain that conviction? Meaning agreed with. The jury agreed with Jamie's testimony. They found her credible. They found her believable. They found her truthful. Assume that. Would that evidence be sufficient for that conviction? I do assume that, and the answer is no. How? The fact that she submitted a driver's license, I guess I'm not clear on your hypothetical. Let's just put it in terms. The way the U.S. Supreme Court describes this is could any rational jury, evaluating the evidence that the government presented on that count, have returned a guilty verdict? And all I'm doing is asking the question in a different way. Because I think the answer to that, unless you tell me to, I think it's got to be yes. Because if a jury credited her testimony, they found her believable, that means that the government proved beyond a reasonable doubt that she was a minor. And your client had illicit images of her that he was posting and driving around with and sending and doing whatever else he was doing. The issue, the government has to prove actual knowledge. That's the problem. But she testified that she told him. She told him, but. Which would be actual knowledge. Well, if he believed her. But that's what the district court judge looked at is what are the circumstances. She told him, and the government's argument is that they concede that he didn't know she was underage when he photographed her. They claim that he was on notice at this point. He certainly was on notice. But that's not the test. The test is did he believe it. But he said he didn't believe it. But isn't that weighing his testimony and his favor? Yeah, absolutely. He could have been lying, and there's no question that he's a liar. But there's other circumstances, and the judge looked at these. For example, the fact that she was trying to get him to delete all of his work. So, of course, now she's going to say she was underage. I think the most telling circumstance is that he did not delete. If he believed that she was underage and that he possessed child pornography, which could send him to federal prison, why wouldn't he have deleted it? Yeah, but the point of it is not for the three judges on the panel and you and the government to have a debate about it here. It's a question of what the legal sufficiency supporting or not supporting the jury's conclusion here. The jury returned a guilty verdict, right? Correct. And that sure suggests to me that they believed they credited the victim Jamie's testimony. And if they did that, why isn't that sufficient? Regardless of however many of us there are here, would we do it if we did a moot court in the courtroom? I mean, it's basic constitutional law. He had a right to be proven guilty beyond a reasonable doubt. And if the government did not present sufficient proof to convince a jury beyond a reasonable doubt that he knew she was underage. But I think that's what the question is, Mr. Goodman. She testified, I told him I was 16. Not only did I tell him, but I sent him a copy of my ID showing him that I was 16. And the jury credited her. That would be enough for a reasonable juror to conclude he knew. I respectfully disagree. What if your client hadn't testified? What if your client had not testified and it was just Jamie, the victim, getting up there and testifying? I told him I was 16. I sent him a copy of my ID showing I was 16. Would that be enough for the government to prove beyond a reasonable doubt that he knew she was underage? Mr. Johnson did not testify at trial. I'm sorry. Let me rephrase that. Suppose his statements were not out there that he did not believe it. I don't think his statement, the fact that he responded and called her a liar, is really the most important thing. But that's what the judge relied on. She focused on that, but she also focused on the fact that he was not targeting underage women. The fact that the government presented no expert testimony, that this looked like a child rather than an adult. And I personally believe that the most powerful evidence is the fact that he kept that photo. If he really believed she was underage, this is something that could land him in federal prison. He knows she's angry. I think that's a hard argument, though, on this record to make. This is the guy that, when he was let on a bond to go to his mother's funeral, he took off. He certainly knew that would put him back in prison. So I think that's a hard argument to make. And got caught with child pornography. Pardon me? And got caught with child pornography. Correct. Okay, why don't we give you some rebuttal time. Okay, you'll get some rebuttal time. Okay, let's hear from the government. May it please the Court, Your Honor, Counsel Maureen Marin, on behalf of the United States. Your Honor, as the District Court correctly held, that Brian Johnson's conviction on seven counts of sex trafficking was supported by sufficient evidence. The evidence at trial established that Johnson had set up a fraudulent enterprise. He recruited these women through fraud. He promised them money and career opportunities if they would engage with him in the creation of adult films for the purposes of selling those images. There's no dispute here that these women were enticed or obtained by fraud. Every victim testified that they would not have even come to the hotel to meet with Mr. Johnson but for his fraudulent promises. So can you jump to the how can a false or fraudulent promise be anything of value within the way Congress defined Commercial Sex Act? So let me back up a little bit and just talk about how did… Because I agree with you. I think you're right on whether you call it solicitation, enticement, by fraud. I'm with you all the way through that. But then we get to that Commercial Sex Act part of it. It's sex. They are trading sex for the promise of a career opportunity. So the way he phrased it to him or his pitch was simple. Do you want the money? Do you want the career? Then you need to have the sex and let me film it so that I can then sell that commodity so you can have what you want. And it was false and fraudulent. Everything about it was false and fraudulent. So let's take a situation where, say, at 1 a.m., one person solicits prostitution on the streets of Chicago and they do that with false and fraudulent promises. They show up in a fancy car. They promise this. They promise that. It's all a barrel of lies. But those promises, the appearance the individual has, cause the victim to engage in the conduct. Could that defendant be convicted under 1591? Because what that would mean is that false and fraudulent promises that accompany ordinary prostitution, now that's a crime to be sure, would violate 1591. So I know what you're going to say about the fact pattern here. Okay, but I just want to focus on the hypotheticals because someone's going to have to write an opinion. Right. I think that there is some gray area in the spectrum of what is or isn't a commercial sex act or false or fraudulent promises. I think that the difference between the individual who approaches a prostitute and says, I'll pay you $500, have the sex, doesn't pay him. Buy you a wardrobe, whatever, and they pull up in a Porsche and, you know, et cetera, et cetera. Then I think that I would have to say that would be sex trafficking, potentially, depending on what evidence was adduced at trial. Because the woman would not have. I think that's got to be your answer. And so the question, I mean, that's up for the government. It's not up to me. The question then becomes, how do you articulate the line drawing here? Because one of the things that Mr. Goodman, I think, is absolutely right about when you look at the statute and its purposes, its evidence by its text, et cetera, that it does have a trafficking kind of aspect to it in terms of why does it exist. In other words, there's no evidence that Congress enacted 1591 to criminalize ordinary fraudulent prostitution. It's not why the statute exists. But if we all can come up with a hypothetical, like the one I gave you, that looks like it's picked up by the principles that, you know, that are kind of underlying your position, that starts to get worrisome. And so what my question to you is, if you had to write the one or two sentences where all the action's at in the opinion, how would you articulate the line? I think it would be the nature of the scheme here is different from a one-off individual who propositions a woman on the street who knows that she is participating in prostitution. But what does that go to in terms of the statute? And I have some of the same questions Judge Scudder has raised. If you're talking about the nature of the scheme, there's nothing in here that talks about the nature of the scheme. We've been focused on commercial sex act, which is defined as any sex act on account of which anything of value is given to or received by any person. So what's the limiting principle of that? That's another way of asking the same question. If your argument is that a promise of something satisfies the anything of value, where are the limits? There's a qualitative difference between what happened here and what happens when you have somebody who is a prostitute who is not procured by fraud in the sense of they're not brought to that place. They're there walking the street or wherever on the app knowing what they're getting into, knowing what the business propositions are, where here everything was a total artifice. In other words, he created a commercial market. Yes, he created a market and the product of that market wasn't just sex. It was we're going to make adult films and you're going to get rich. So it's a little different of a situation, I think, than what you're proffering. I'd also add that whether there are two people involved or three people involved, I don't know makes a difference. If he had brought these women to the hotel and there was another third person there who happened to be the one having sex, I don't think that changes the analysis here. The same deception and the same exploitation has happened here. The statute is called the Trafficking Act, but among its legislative purposes in the statute, it concerns itself with the kind of sexual exploitation that occurred here. Exploitation relating, and this is from the statute, the exploitation of persons related to prostitution and pornography. And it also recognizes that the current statutory scheme or the scheme at the time in 2000 when it was first enacted, did not address the specific kind of exploitation when it comes to the exploitation of another person's body. And therefore, those individuals who are exploiting women in this context, or men really, any gender, deserve more harsh punishment. I do want to just turn briefly to our cross-appeal, unless Your Honors have further questions on the sex trafficking aspect of it. Can I just ask one more question? Sure. We'll give you time on that. You've talked about the nature of this. I'm kind of picking up on Judge Ripple's comment, the commercial aspect of this. From a legal perspective, should the focus be on how the victim perceived what was happening? Or, these are not Mr. Goodman's words, but I think it comes out of his position, that you need to focus more on the defendant. The defendant's the one that's charged with the crime. The defendant's the one that has to be proven beyond a reasonable doubt, okay? And that's why he focuses on false or fraudulent. Whereas the commercial market, no, you're fine. The commercial market aspect of this, in my mind, is all but saying, focus on the victim. So, focus on how the Jamie's of the world would have, not only would have, did react to what the defendant was doing, and then what they chose to do in response to that, or were induced into doing. Where's the focus? Is that the way to analyze it? I don't think you can look at it just from the perspective of the victim. You have to look at what was the defendant intending. And in this scenario, the defendant was intending to create this fraudulent scheme, this fraudulent opportunity, so that he could obtain these women to have sex, to make these films. And those films were made. I mean, the evidence at trial was that he made them. I think Mr. Goodman would say in response to that, if you're focused on the defendant's intent, he never intended to give him any of these benefits. So he never intended for anything of value to be given to them. Right. But I think you also need to, when you evaluate whether it is a thing of value across the statutes, we look at what's the subjective interpretation or expectation from the victim. And here, the evidence in this record is that not only did the victims believe these are things of tremendous value to them, but Johnson knew that and exploited it over and over again by telling them, would you not want the money? I don't know if I have to. He would send them emails saying, I don't know if I have to explain to you all the money that is waiting for you if you would just do this. No one is caught by surprise here as to whether or not this is valuable. I think we could be concerned about a case where the vision of what a thing is of value is trapped just in the victim's head, and the defendant has no idea. Right. But that's not what's happening here. The defendant knew these things were valuable and he exploited that. He created a commercial operation, a fake commercial operation. And number one, and then he used that fake commercial operation to create a false market. Every wannabe kid who wants to be in films. Right. Go ahead, Your Honor. I'm sorry. Well, that's commercial market. Correct. He that's the universe that he was operating in. And I think that does distinguish, like I said, different from the situation where you might have a prostitute. I mean, to put it, he clearly affected interstate commerce here. He he simply pulled in a lot of people who thought they were participating in interstate commerce. Being involved in an industry that exists, it's just that he didn't he wasn't a player. Despite his best efforts to convince the women that he was. I don't want to neglect our cross appeal argument, and I would just say here. The district court did air when it overturned the jury's finding as to the child pornography counts. There was evidence in the record from Jammie and corroborated by the emails that she, in fact, told the defendant that she was 16 when the pictures were taken. That she provided them him with her driver's license and that while the jury was entitled to consider that the defendant did protest. I don't believe you prove it. They were also entitled to consider that in light of everything else that they knew about the defendant and everything else that they knew about Jammie. And by the time they considered this evidence, they had substantial evidence in the record that the defendant was not trustworthy. That his protestations were entirely false. That there really wasn't anything that he ever said to these women that was above board. What about the factor that the district court considered below that his scheme was not focused on minors? This particular scheme and that that seemed to be very significant to the court. That does not really inform the analysis of what he did with the images after he learned that the person in them was underage. All of that, he wasn't soliciting minors aspect of it, really would be relevant if we had charged him with possessing or creating child pornography at the time the images were made. But that's not what the charge was. The charge was on several different occasions after December of 2012. He knew there was evidence in the record that he knew she had been 16 years old and yet he continued to possess and to traffic in images which at that time he knew were child pornography. Well, he sent a link to her right after learning this. Correct me if I'm wrong. He did. He sent a link to her with her image on it and the website was entitled teen girls. He did do that in addition to transporting the images for his own benefit. So that particular transportation wasn't actually one of the charge transportation counts. But there was evidence in the record of that. So he was transporting. He took the image later and he transported over. It's evident. It seems it's evidence relevant to his knowledge of age. It certainly is. It certainly is. And for those reasons, Your Honor, I'd ask this court to affirm the sex trafficking convictions, reverse the dismissal of the child pornography convictions and affirm the sentence. Can I ask you one final question? Just just assume for discussion purposes that we take you up on that. OK, we'll have to figure it out. If we if the case goes back on that ground, it would be for plenary resentencing, correct? You agree, I think it would need to be. Yeah. In other words, it will affect the guidelines range, whether the ultimate result would be different. I don't know. Yeah. And under the under kind of thoughts of sentencing, sentencing, packaging, doctrine, sentence package doctrine and things like that, because the district court when the district court sentenced Mr. Johnson, the court sentenced him on the 1591 convictions. And of course, didn't sentence him on the child pornography counts. Correct. So if it went back, then the court would have to sentence him on the child pornography counts. And wouldn't it? Doesn't our law suggest that the totality of the sentence would need to be reconsidered? It does. I think to the extent that. What I meant by that statement was to the extent that this court felt that the 35 year sentence was already at a starting point procedurally, substantively unreasonable, which, of course, is not our argument. We believe it is that we we would ask you to affirm that aspect of it. OK, very well. Thank you. Appreciate it. Mr. Goodman, we asked you a lot of questions, so you're going to get the four minutes of rebuttal that you asked for. Thank you. Mr. Goodman, before you get too far into your argument, can I ask you one clarifying question on a topic we didn't get to at the sentencing appeal? Are you raising a procedural challenge or just a substantive challenge to the sentence? It wasn't crystal clear. The argument that I'm relying on it, I believe, is would fall as a substantive challenge because it's that the judge was comparing apples and oranges. You certainly raised a substantive challenge. I wasn't clear if you were also raising a procedural, so just wanted to clarify that. Thank you. Thank you. With respect to the trafficking count, yes, as Judge Ripple stated, he was trying to make victims believe that there is a commercial market. But it was a false commercial market. It was all fictitious. And I would urge this court to look at the case that we cite, United States v. Condell in the Fourth Circuit case. And the reason, that's a fraud case. And the reason I think that case is so significant, I understand it predates the sex trafficking statute. But it's so significant because it's exactly the same scheme. In that case, the defendant posed as a talent agent and a movie producer, and he convinced women to have sex with him in order to advance their- But how is that helpful, given that the trafficking statute wasn't enacted until 2000? Because it fits so perfectly into fraud. But there's nothing that says they couldn't have charged him with fraud here, too. I understand that. But here, in that case, you didn't have to rewrite definitions. So, for example, here, in order to call this sex trafficking, we have to say that a false promise that has no inherent value for a career at my company that doesn't even exist, we have to say that that false promise is something of value that makes it a commercial sex act. That is, to me, is a stretch, a dangerous stretch of the language of the sex trafficking. It fits perfectly within a fraud. In fact, what the Fourth Circuit stated is this scheme was not simply a matter of misrepresentations designed to meet women. It was an elaborate commercial facade surrounding a completely fraudulent enterprise, exactly what Judge Ripple was talking about. But it was all made of smoke and mirrors. Mr. Goodman, I want you to change one and only one fact. Make it hypothetical. The only fact is that we add a third person. Then what? So, well, I guess I would need more facts. So a third person is in the room, a third person- No, Johnson is the one doing the photographing and the filming, and the third person is the one engaged in the conduct with the minor. That's it. But it's all Johnson's enterprise, this whole fraudulent scheme is his brainchild, et cetera, et cetera. I don't think that's trafficking, because trafficking means that you are selling the services of basically a sex slave to a third party. That's the way I understand trafficking. That's the way- Okay, so if that's right, then your argument really doesn't depend upon the 2 versus 3 versus 13 people. It doesn't. Except that in every trafficking case there- And I think it's sort of implicit in the statute that this is a three-party transaction, that you have somebody- If we look at the statute, he recruits- The defendant uses force or threats of force to cause a person to engage in a commercial sex act. Now, I think the statute could have been written more clearly, but I think clearly what Congress had in mind was somebody that traffics in human beings and sells their services as sex slaves. That's the way I read the statute. It clearly is- I understand that the government decided in this case that they could use the statute for a different type of crime, but I think it's a very dangerous road. I don't think it fits. I think we have to rewrite the definition of anything of value, and we have to ignore Congress's concern and targeting of sex trafficking.  Thank you. You're quite welcome. Mr. Goodwin, I see here we have a note that you accepted this case on appointment by the court. We very much appreciate that. Mr. Johnson should know that he was well represented. You have the thanks of the court for taking the case on. Ms. Marin, thanks to you and the government as well. We will take these two appeals under advisement.